```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF ALABAMA
                   SOUTHERN DIVISION


FELICIA M. ANDERSON,            :
                                :
    Plaintiff,                  :
                                :
vs.                             :    CIVIL ACTION 11-0370-M
                                :
MICHAEL J. ASTRUE,              :
Commissioner of Social Security,:
                                :
    Defendant.                  :
```

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits and Supplemental Security (hereinafter *SSI*) (Docs. 1, 13). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 20). Oral argument was waived in this action (Doc. 21). Upon consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

1

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was forty-three years old, had completed a high school special education (Tr. 35), and had previous work experience as a grocery stocker and construction laborer (Tr. 36). In claiming benefits, Plaintiff alleges disability due to arthritis of the knees, obesity, and depression (Doc. 13 Fact Sheet).

The Plaintiff filed applications for disability and SSI on April 17, 2007 (Tr. 117-24). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that Anderson could not return to her past relevant work, but that there were specified jobs which she could perform (Tr. 12-21).

2

Plaintiff requested review of the hearing decision (Tr. 8) by the Appeals Council, but it was denied (Tr. 1-5).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Anderson alleges the single claim that the ALJ erred in his finding of Plaintiff's residual functional capacity (hereinafter *RFC*) (Doc. 13).  Defendant has responded to—and denies—these claims (Doc. 16).  The relevant medical evidence of record follows.

On October 30, 2007, Dr. Todd Engerson, Plaintiff's treating physician, performed arthroscopic surgery on both of Anderson's knees; in a note a week later, he indicated that both the knees and legs looked good, with little edema and the typical amount of swelling in the joint (Tr. 262).  Plaintiff complained of anterior knee pain for which he prescribed Lortab[1] and encouraged physical therapy (*id.*).  On November 27, the doctor indicated that it would take Anderson a while to get back to full normal; because "light duty is not an option at work," she needed to not work and focus on her physical therapy (Tr. 313).  On December 18, Engerson noted that the knees looked good and that they had full range of motion (hereinafter *ROM*); he

---

[1] **Error! Main Document Only.** *Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain." *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

3

indicated that she could do as she wished though she should be careful with squats and stairs and further indicated that she was not quite 100% (Tr. 312).  On January 15, 2008, it was noted that the only thing Anderson could not do was "get down on her knees and the get back up off the floor [without] a tremendous amount of difficulty;" she received cortisone shots in each knee (Tr. 311).

On February 19, 2008, Dr. Todd Engerson, Plaintiff's treating physician, completed a Request for Leave of Absence on her behalf which indicated that he was treating her for cartilage tears and arthritic knees (Tr. 304).  The request was that she be excused from work from February 13, 2008 through March 17, 2008 as "light duty [was] not available" (Tr. 304).

In a letter dated February 19, 2008, Plaintiff's attorney requested Dr. Engerson to "provide a narrative letter that contains the patient's medical history, response to treatment, diagnosis, and prognosis for the conditions" he treats and to complete the enclosed physical capacities evaluation (hereinafter *PCE*) and pain questionnaire, so that they could all be submitted to the Social Security Administration in order to help her get social security benefits (Tr. 400).  The doctor wrote, on the letter addressed to him, the following:  "Has knee

4

arthritis with typical activity related pain.  Can easily do non physical work" (*id.*).  Dr. Engerson declined to complete the PCE (Tr. 401); he also, essentially, declined to complete the pain questionnaire, though he indicated that he had treated Plaintiff since November 22, 2005 for arthritis in both knees which caused her pain for which he prescribed Lortab and which would require injections in the future (Tr. 403).

    On April 15, Engerson noted that Anderson had a little bit of effusion and some tenderness on the lateral joint, but he was going to give her a cortisone shot and let her return to work the next day (Tr. 422).  On May 6, the doctor reported that Plaintiff had attempted to return to work, but that her knees kept her from it; x-rays of the left knee showed significant medial compartment narrowing and that the patella femoral region appeared to look like it had before (Tr. 421).  He indicated that her symptoms were convincing and that arthroscopic debridement would be a reasonable thing to consider.  On May 27, Engerson noted that the left knee looked a lot better, following surgery on the fifteenth, and that Anderson would do physical therapy at home (Tr. 420).

    In a statement of disability, dated June 11, 2008, Dr. Engerson declined to state a specific opinion about her

5

abilities, noting that Anderson's impairment was improving and that "she is out of work because light duty is not available—out to rehab after knee surgery" (Tr. 419). On July 8, the doctor noted good left knee ROM though she was still struggling with it; he indicated that she was not 100% able to return to her work because of the crawling and squatting (Tr. 491). On August 19, new left knee x-rays showed "almost complete deterioration of her medial joint space. The lateral side has some sclerosis and osteophytes but the medial side looks like it is pretty well gone" (Tr. 490). The doctor noted that she could not yet return to her job as a stocker (*id.*). On September 30, Engerson noted that because of continuing left knee problems, "she is not able to do her job which involves heavy physical activity" (Tr. 489). On that same date, the doctor stated that she was not able to return to work for three weeks (Tr. 473).

On November 10, 2008, Dr. Engerson performed a total left knee replacement (Tr. 484-85). On December 2, the doctor noted that Anderson complained of generalized pain near the medial side of her knee; her ROM was ten to ninety degrees but the quad was very weak (Tr. 520). The doctor expressed concern that she did not have full extension as she had had it in the operating room. On December 22, Engerson noted that the x-rays of the

6

left knee were perfect and that her flexion was about one hundred degrees, though she was lacking some extension (Tr. 518).  On February 2, 2009, the doctor noted that Plaintiff still lacked some extension but that she needed no more physical therapy; he indicated doubt that she would never be able to return to her past job but that she could do some sedentary type occupation (Tr. 517).  On March 31, Engerson noted that left knee flexion was up to one hundred ten degrees though extension was seven-to-ten degrees short of full ROM; he noted that she was doing alright (Tr. 516).  On June 9, the doctor completed an application so that Anderson could have a disability access placard because of her long-term orthopedic condition (Tr. 524).  On June 6, 2009, the doctor noted less than full extension and flexion in the left knee; he recommended continued stretching and strengthening, but indicated that he could really do nothing else for her (Tr. 531).

In her decision, the ALJ determined that Plaintiff had the ability to

> perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except her standing and walking are limited to no more than 15 to 30 minutes at one time and to no more than two hours in a work day; she can only rarely operate foot controls; she cannot climb ladders, scaffolds or ropes;

>     she cannot kneel, crawl, work at unprotected
>     heights, or work around dangerous equipment;
>     she can stoop and crouch on occasion; she
>     cannot perform complex or detailed job
>     instructions but is limited to doing tasks
>     involving simple one and two step
>     instructions; and she cannot work in crowds
>     or have more than occasional contact with
>     the public.

(Tr. 16). In reaching this decision, the ALJ faithfully summarized Dr. Engerson's medical records and noted that he based his RFC conclusions on the doctor's opinions (Tr. 17, 19).

Plaintiff has raised the claim that the ALJ erred in his finding of her RFC. More specifically, Anderson asserts that the ALJ improperly relied on notes by the treating physician, misconstruing their meaning (Doc. 13). Even more to the point, Plaintiff has referred this Court to the following specific language coming out of SSR 96-5p, entitled "Medical Source Opinions on Issues:"

>     From time-to-time, medical sources may
>     provide opinions that an individual is
>     limited to "sedentary work," "sedentary
>     activity," "light work," or similar
>     statements that appear to use the terms set
>     out in our regulations and Rulings to
>     describe exertional levels of maximum
>     sustained work capability. Adjudicators
>     must not assume that a medical source using
>     terms such as "sedentary" and "light" is
>     aware of our definitions of these terms.
>     The judgment regarding the extent to which

>           an individual is able to perform exertional
>           ranges of work goes beyond medical judgment
>           regarding what an individual can still do
>           and is a finding that may be dispositive of
>           the issue of disability.

SSR 96-5p.  The Court notes that the ALJ is responsible for determining a claimant's RFC.  20 C.F.R. § 404.1546 (2011).

The Court finds no merit in Plaintiff's claim.  A careful reading of all of Engerson's medical records indicate that although the doctor may not have known the requirements and responsibilities specific to sedentary, light, or heavy work, he knew that Plaintiff's knees did not afford her the ability to work at her past job as a stocker which required crawling and squatting.  The Court further notes that the treating doctor was, on several occasions, given the opportunity to relate his specific opinion as to Anderson's ability to sit, stand, walk, lift, carry, and do other things required in various work settings, but he declined.  The Court cannot say that the ALJ's conclusion regarding Plaintiff's RFC is not supported by substantial evidence.  The Court also notes that Plaintiff has pointed to no other medical evidence demonstrating that she cannot do the work found by the ALJ.

Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980) and that this action be **DISMISSED**.  Judgment will be entered by separate Order.

DONE this 29th day of February, 2012.

s/BERT W. MILLING, JR.<br>
UNITED STATES MAGISTRATE JUDGE